967 P.2d 134

**In re DAVID H.**

**No. 2 CA–JV 97–0095.**

Court of Appeals of Arizona,
Division 2, Department B.

Aug. 25, 1998.

**460**

Barbara LaWall, Pima County Attorney, by Verla R. O'Donovan, Tucson, for State.

Suzanne Laursen, Tucson, for Minor.

*OPINION*

ESPINOSA, J.

¶1  The juvenile, born October 9, 1981, appeals from the juvenile court's orders adjudicating him delinquent for aggravated assault of a peace officer and committing him to the Arizona Department of Juvenile Corrections (ADJC) for three months. We affirm.

¶2  In July 1997, prior to the current offense, the juvenile was committed to ADJC for a period of nine months in a Level IV secure facility after the court adjudicated him delinquent for two theft-related felonies and revoked his probation from an earlier adjudication.[1]  Immediately after the court ordered him committed, the juvenile assaulted probation officer Ruiz in open court by picking up an accordion folder containing his attorney's files and throwing it across the table, striking Ruiz on the side of his face. The juvenile was charged with one count of aggravated assault on a peace officer, for which he was adjudicated delinquent. At the September 1997 disposition hearing, the court ordered the juvenile confined for an additional three months following completion of his original nine-month term.

¶3  In this appeal, the juvenile argues that juvenile probation officers are not "peace officers" for purposes of the statute defining aggravated assault, A.R.S. § 13–1204(A)(5), and that even if they were, the juvenile neither knew nor had reason to know that Ruiz was a peace officer, as the statute also requires. On review, we consider the evidence in the light most favorable to upholding the juvenile court's findings and resolve all inferences against the juvenile. *Maricopa County Juvenile Action No. JV–123196*, 172 Ariz. 74, 834 P.2d 160 (App.1992). We will not disturb the juvenile court's ruling unless there is no reasonable evidence to support the court's findings of fact. *Maricopa County Juvenile Action No. JV–132905*, 186 Ariz. 607, 925 P.2d 748 (App.1996).

¶4  Section 13–1204(A)(5) provides that a person commits aggravated assault "[i]f the person commits [an] assault knowing or having reason to know that the victim is a peace officer...." "Peace officer" is defined in § 13–105(25) as "any person vested by law with a duty to maintain public order and make arrests." Section 8–205(3) provides that an authorized juvenile court officer shall "[h]ave the authority of a peace officer in the performance of the court officer's duties." Pursuant to § 8–203, a juvenile probation

---

1. We affirmed the juvenile court's disposition order on appeal. *In re David H.*, 2 CA–JV 97– 0082 (memorandum decision filed April 23, 1998).

officer is unquestionably an "authorized juvenile court officer."

■ ¶ 5 Whether because it is self-evident or because the issue simply has not arisen, there is no Arizona case law expressly holding that a juvenile probation officer is a peace officer for purposes of § 13–1204(A)(5). In dictum, however, the Supreme Court has observed that a probation officer "is a peace officer." *Fare v. Michael C.,* 442 U.S. 707, 720, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197, 209 (1979); *see also State v. Nelsen,* 390 N.W.2d 589 (Iowa 1986). We agree, and hold that a probation officer, having the authority of a peace officer in the performance of his or her official duties pursuant to § 8–205, is likewise a peace officer for purposes of § 13–1204(A)(5).

¶ 6 The juvenile next argues that he did not know nor have reason to know the probation officer was a peace officer and therefore did not commit an aggravated assault. The evidence before the court on this issue included the testimony of Officer Ruiz that he had been the juvenile's probation officer for approximately five months before this assault; that two months earlier, Ruiz had told the juvenile that if he continued to violate the conditions of his probation, Ruiz would arrest him; and that he believed the juvenile understood Ruiz had the power to make arrests.

¶ 7 At a minimum, the juvenile knew Ruiz was an officer of the court; at the July disposition hearing, before the court ordered the juvenile committed for nine months, Ruiz had first advised the court that the probation department's recommendation was commitment for a twelve-month period. The juvenile admitted that he struck Ruiz with the files because he was angry about the length of his commitment and blamed Ruiz. He claimed, however, that he did not know the probation officer was a peace officer, that he had never seen Ruiz's badge, and that he was not aware his probation officer had authority to arrest him.

■ ¶ 8 Implicit in the court's conclusion that the juvenile committed an aggravated assault is its finding that the juvenile either knew or should have known that his probation officer had the power to arrest

him, *see* § 13–105(25), and therefore was effectively a "peace officer" for purposes of § 13–1204(A)(5). In making that finding, the court necessarily found the testimony of the probation officer more credible than that of the juvenile, as was its prerogative; judging the credibility of witnesses and resolving conflicts in testimony are uniquely the province of the trial court, given its ability to observe the witnesses while testifying. *See State v. Cid,* 181 Ariz. 496, 892 P.2d 216 (App.1995). Because there is reasonable evidence to support the court's factual findings, we will not disturb its rulings. *Maricopa County Juvenile Action No. JV–132905.*

¶ 9 The juvenile court's orders of adjudication and disposition are affirmed.

BRAMMER, P.J., and HOWARD, J., concur.