NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JASON H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] A.H., *Appellees*.

No. 1 CA-JV 14-0308
FILED 6-11-2015

Appeal from the Superior Court in Maricopa County
No. JD 510536
The Honorable Brian K. Ishikawa, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Arizona Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27.

Arizona Attorney General's Office, Phoenix
By Amanda L. Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Jon W. Thompson joined.

---

**D O W N I E**, Judge:

**¶1**　　　　Jason H. ("Father") appeals from an order terminating his parental rights.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[2]

**¶2**　　　　Father and Alicia M. ("Mother") are the parents of A.H., who was born in 2008 in California.  Mother took A.H. to Arizona in 2012, while Father remained in California.  After Mother was hospitalized for mental health issues in October 2012, DCS took custody of A.H.  Shortly thereafter, DCS filed a dependency petition, and A.H. was adjudicated dependent as to Mother and Father.

**¶3**　　　　DCS established a case plan of family reunification and offered Father services, including supervised and telephonic visitation and drug testing.  DCS also asked Father to enroll in parenting classes in California, to participate in a substance-abuse program, and to sustain stable housing and employment.

**¶4**　　　　DCS requested a home study of Father's California residence pursuant to the Interstate Compact for Placement of Children ("ICPC").  Despite reminders from the social worker performing the study, Father did not submit required documentation.  It was also discovered that Father would be serving a 210-day jail sentence beginning in August 2013.  ICPC denied placement of A.H. with Father.

---

[2]　　On appeal, "[w]e view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

¶5 A.H. was placed with J.N., who is the biological father of A.H.'s half-brother. Father regularly spoke with A.H. on the telephone and visited her a number of times. He took one drug test but otherwise failed to participate in drug testing or substance-abuse counseling. Father was also unable to maintain employment. He completed a parenting class in California but did not provide documentation of his attendance until just before trial.

¶6 DCS moved to terminate Father's parental rights. After an evidentiary hearing, the juvenile court granted the motion. Father timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶7 To justify termination of a parent-child relationship, the court must find one of the statutory factors listed in A.R.S. § 8-533(B) by clear and convincing evidence and must also find, by a preponderance of the evidence, that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). Here, the court found two statutory factors warranting severance: nine months in out of home placement pursuant to A.R.S. § 8-533(B)(8)(a), and fifteen months in out of home placement pursuant to A.R.S. § 8-533(B)(8)(c). The court also concluded that severance was in A.H.'s best interests.

¶8 Father does not challenge the existence of statutory factors warranting severance. His sole argument on appeal is that the juvenile court's best interests finding was "clearly erroneous" and "contrary to the substantial evidence in the record." He identifies evidence in the record regarding positive aspects of his relationship with A.H., including a history of caregiving, completion of a parenting class, regular phone contact and visits, and the bond he and A.H. share. However, the juvenile court is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings." *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987). We do not reweigh the evidence on appeal, but review the record only to determine whether sufficient evidence exists to sustain the court's judgment. *Maricopa Cnty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609, 925 P.2d 748, 750 (App. 1996).

¶9 The best interest determination "must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*,

3

167 Ariz. 1, 5, 804 P.2d 730, 734 (1990).  In making such a determination, the court should consider all relevant factors, including the child's adoptability and the circumstances surrounding the child's current placement. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30, 231 P.3d 377, 383 (App. 2010).

**¶10**        The court found that severance would benefit A.H. by providing her "with permanence and stability."  It further found that A.H.'s placement with J.N. was consistent with the child's needs and that J.N. was "committed to adopting her." The record supports these findings.

**¶11**        By the time of the severance hearing, A.H. had been living with J.N. for 22 months.  Witnesses testified that A.H. is bonded with both J.N. and her half-brother.  J.N. is committed to caring for A.H. on a long-term basis and is willing to adopt her.  He provides a stable home and meets all of A.H.'s needs. Should J.N. not adopt A.H., the evidence established she is nonetheless "very adoptable."  Moreover, DCS cannot place A.H. with Father due to the ICPC denial, and Father is not willing to move to Arizona.  As the case manager observed, denying severance would place A.H. in "limbo" and deprive her of permanency and stability. Father argues "the relationship between father and child can be nurtured and developed by continued visitation in Arizona and by telephone contact." But a trier of fact could reasonably conclude that such an arrangement is not in A.H.'s best interests. *See Kent K.*, 210 Ariz. at 286, ¶ 31, 110 P.3d at 1019 (once the court has determined parent is unfit through finding of a statutory factor, focus shifts to interests of child as distinct from those of the parent).

**CONCLUSION**

¶12  We affirm the order terminating Father's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama