953 P.2d 1248

STATE of Arizona, Appellee,

v.

Andrea Ann LINDSLEY, Appellant.

No. 1 CA–CR 96–0638.

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 23, 1997.

Review Denied April 21, 1998.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, J. Randall Jue, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Louise Stark, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

LANKFORD, Judge.

This decision is another in a long line of cases involving the scope of restitution to victims of crime. We once again find it necessary to address the nature of "economic loss" eligible for restitution under applicable Arizona statutes.

In this case, defendant Andrea Ann Lindsley appeals from an order requiring her to pay restitution to the victim in the total amount of $305. Because we find that the trial court properly ordered defendant to pay restitution on certain items but improperly awarded restitution for other items, we affirm the award as modified.

Briefly stated, the relevant facts are the following. Defendant came into possession of a Dooney and Burke wallet in the parking lot at Metrocenter. The wallet contained a checkbook, a driver's license, credit cards and other items belonging to the victim. Defendant took the wallet to a house shared by her mother, co-defendant Janice Lindsley.

That same day, police arrested defendant, her mother, and Diane Revel, a friend of defendant's mother, after defendant's mother and Revel attempted to cash a check belonging to the victim that had been made payable to Revel. Although defendant was not with her mother and Revel when they presented the check for cashing, police found her waiting for them in a car in the parking lot. Police found defendant still in possession of the victim's wallet, the remaining checks in the series from the victim's checkbook, and other property belonging to the victim. Police also discovered several baggies of marijuana and rolling papers in defendant's possession.

The State charged defendant with forgery related to the check based on accomplice liability. Defendant was found guilty after trial of one count of forgery, a class four felony, and one count each of possession of marijuana and possession of drug paraphernalia, each class six felonies.

The court sentenced defendant to three years probation. The presentence report noted that the victim was "requesting restitution in the total amount of $305.00" based on the following:

> [The victim] states her wallet was returned but it had a distinct odor of marijuana. She was unable to use it and requests restitution in the amount of $65.00 for the wallet. Also, a rope chain bracelet costing $45.00 and a pinkie ring costing $55.00 were in the wallet and not returned. [The victim] missed a total of four hours of work on two consecutive days at a rate of $7.00 per hour and would like to be reimbursed for these lost wages. She also is requesting two additional days of lost wages for the trial process at $7.00 per hour.

As a condition of probation, the trial court ordered defendant to pay the victim restitution in the total amount of $305 in monthly installments of "at least $25 per month."

The transcript of the sentencing hearing shows defense counsel raised the following objection to restitution:

> I don't think [the victim] is entitled to any restitution under these crimes. The defendant was convicted of forgery, possession of marijuana and possession of drug paraphernalia. None of these offenses have anything to do with stealing the wallet or destroying the wallet or damaging the wallet so none of those offenses caused whatever losses she claims, so I don't think any restitution is appropriate under the circumstances.

On appeal, defense counsel argues in her opening brief: "The restitution ordered over the defendant's objection that it was legally impermissible should be vacated in this case. It should be reduced to $56, representing *one day* of testimony at [the victim's] salary." (Emphasis added). However, in the conclusion of her brief, defense counsel also states: "All restitution ordered beyond salary for *one half day* should be revoked." (Emphasis added).

The State concedes that the trial court incorrectly ordered restitution for the jewelry and for "some of the lost wages." The State asks this Court to modify defendant's sentence by reducing the amount of restitution ordered by $156—representing $100 for the missing jewelry and $56 for one day's work at the victim's hourly wage rate of $7 per hour—and granting restitution in the total amount of $149—$65 for the wallet and $84 for twelve hours of lost wages.

■ Restitution of full economic loss to a victim of a crime is mandatory under our sentencing statutes. *See* Ariz.Rev.Stat. Ann. ("A.R.S.") §§ 13–603(C), 13–804; *State v. French,* 166 Ariz. 247, 801 P.2d 482 (App. 1990). The trial court has discretion to set the restitution amount according to the facts of the case in order to make the victim whole. *State v. Ellis,* 172 Ariz. 549, 551, 838 P.2d 1310, 1312 (App.1992). On appeal, this Court will uphold the restitution award if it bears a reasonable relationship to the victim's loss. *State v. Wilson,* 185 Ariz. 254, 260, 914 P.2d 1346, 1352 (App.1995); *State v. Howard,* 168 Ariz. 458, 460, 815 P.2d 5, 7 (App.1991).

■ Both parties agree that the $100 awarded for the missing bracelet and ring claimed by defendant should be vacated. While a trial court may impose restitution for crimes admitted by defendant but uncharged by the State, *State v. Cummings,* 120 Ariz. 69, 71, 583 P.2d 1389, 1391 (App.1978), no restitution may be imposed for an uncharged offense that has not been admitted by defendant and for which there is no supporting evidence before the trial court or for which the defendant has not agreed to pay restitution. *See State v. Zierden,* 171 Ariz. 44, 45, 828 P.2d 180, 181 (App.1992); *State v. Scherr,* 9 Wis.2d 418, 101 N.W.2d 77, 82 (1960). Defendant neither admitted theft of the jewelry nor was convicted of that offense, and did not agree to pay restitution for this loss. Moreover, the lost jewelry was not mentioned until the presentence report, and that evidence is contradicted by the victim's testimony at trial. When asked "what kinds of things" were inside her wallet by State's counsel, the victim made no mention of the missing jewelry. The trial court erred in awarding $100 for the missing bracelet and ring.

■ The same may not be said of the court's award of $65 for the damaged wallet. While it is true that defendant was not charged with the theft of the victim's wallet, it is also true that defendant testified under oath that she possessed the victim's wallet with the intent of permanently depriving the victim of it, thereby admitting the theft. Furthermore, the arresting officer testified that he saw the victim's wallet intermingled with defendant's other possessions in defendant's purse. The officer also testified that the marijuana was found in a red checkbook that the officer saw *inside* the wallet in defendant's purse. The trial court could reasonably infer from the evidence that the damage to the wallet was the direct result of defendant's unlawful possession of it and the contact with defendant's marijuana. Defendant does not contest the amount of restitution requested for the wallet. The trial court therefore properly awarded restitution for the damaged wallet.

We next review the requirement that defendant pay the victim restitution for lost

wages for the time the victim spent in court. By statute, a trial court must impose restitution for economic loss as part of the defendant's sentence. A.R.S. § 13–603(C). "Economic loss" is defined by statute as follows:

> "Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, *lost earnings,* and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

A.R.S. § 13–105(14) (Supp.1996) (emphasis added).

■ The issue is whether wages lost due to voluntary attendance at trial are recoverable "lost earnings" on the one hand, or non-recoverable "consequential damages" on the other. We hold that this item is subject to restitution.

■ "The statute mandating recovery for economic loss is quite broad, and we have allowed restitution for a wide variety of expenses caused by the conduct of persons convicted of crimes." *State v. Baltzell,* 175 Ariz. 437, 439, 857 P.2d 1291, 1293 (App. 1992). The legislature identified lost earnings as among the losses for which the court may order restitution. We conclude that this encompasses not only wages lost due to an injury caused by the criminal conduct, and wages lost because of a trial appearance made mandatory by subpoena, but also the victim's voluntary attendance. We reach this conclusion by rejecting the proposition that the lost wages are "consequential damages" not eligible for restitution.

■ Recoverable economic losses are those that flow directly from or are a direct result of the crime committed. *State v. Morris,* 173 Ariz. 14, 17, 839 P.2d 434, 437 (App. 1992). This contrasts with "consequential damages," which are those that do not flow directly from the defendant's criminal activity. *Id.* Consequential damages instead are produced by the concurrence of some other causal event. *See id.* (quoting 25 C.J.S. Damages § 2 at 617). Although we previous-

ly said if a loss is a "foreseeable" loss it is not merely a consequential loss, and that loss which is the "natural consequence" of the crime is not consequential, *id.* at 17–18, 839 P.2d at 437–38, the proper focus is upon how directly the loss flows from the defendant's acts. And while we previously stated that the criminal conduct must be a "but for" cause, *id.* at 17, 839 P.2d at 437, such cause-in-fact is a necessary but not sufficient condition to restitution. A loss to which the defendant's act contributed can be either economic or consequential damage. Again, the distinguishing feature is how directly the loss flows from the crime.

In this case, the victim was required to attend some court proceedings by court order and voluntarily attended others. Defendant asks us to differentiate between wages lost for mandatory attendance and losses due to voluntary attendance.

Defendant finds some support in *State v. Wideman,* 165 Ariz. 364, 798 P.2d 1373 (App. 1990). In that case, we held that travel expenses to attend court hearings were consequential losses not eligible for restitution. We reasoned that, because attendance had not been required, the travel expense was a matter of choice and "not directly related to the defendant's crime...." *Id.* at 369, 798 P.2d at 1378. On the other hand, we held that mental health counseling expenses were direct losses subject to restitution. *Id.*

After reflection, we find *Wideman* impossible to reconcile with the restitution statute and indeed with itself. We perceive no real difference between how directly the murder caused the counseling expenses and how directly it caused the travel expenses. *See id.* at 370, 798 P.2d at 1379 (Voss, J., dissenting.) The counseling expenses were no more and no less "a matter of choice" than the travel costs.

Moreover, lost wages are specifically mentioned in the restitution statute as restitution-eligible economic loss, whereas the travel expenses involved in *Wideman* are not. Accordingly, we decline to apply *Wideman* to deny restitution of the lost wages in this case.

What remains for us to resolve is whether lost wages for voluntary attendance at the

criminal trial proceedings flow directly from the crime. We think they do, and therefore hold these losses subject to restitution.

The fact that the victim was in court at all was a direct result of defendant's crime. She did not "choose" to attend the hearings as a disinterested bystander might, but because she was the victim of defendant's actions and, thus, unavoidably entwined in the criminal proceedings. But for defendant's criminal actions, the victim certainly would not have been present at the proceedings. It is a direct result of a crime that the victim attends the hearings and thus suffers wage loss. We believe it makes no difference whether the victim attended pursuant to subpoena or not.

To deny a victim the right to reimbursement for wages lost in attending court proceedings which he or she may attend by right would be tantamount in some instances to denying that individual the opportunity to exercise that right. Pursuant to the Victim's Bill of Rights, a victim has the right "[t]o be present at . . . all criminal proceedings where the defendant has the right to be present." Ariz. Const. art. II, § 2.1(A)(3); Ariz. R.Crim. P. 39. "All criminal proceedings at which the defendant has the right to be present" means precisely that and includes both proceedings at which a victim's attendance is required by court mandate and those which the victim "chooses" to attend.

The victim's lost wages in attending court proceedings in this case were a direct result of defendant's actions. We affirm the trial court's order requiring defendant to reimburse the victim in the amount of $140 for wages lost because of attendance at court hearings.

The trial court's order of restitution in the amount of $65 for damages to the victim's wallet is affirmed. The order of restitution for lost wages in the amount of $140 is also affirmed. The order of restitution in the amount of $100 for the victim's lost bracelet and ring is vacated.

THOMPSON, P.J., and TOCI, J., concur.